IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ANDREA PRUITT, | § | CV NO. 5:14-cv-808-DAE |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| JOURDANTON HOSPITAL CORP. | § | |
| d/b/a SOUTH TEXAS REGIONAL | § | |
| MEDICAL CENTER, KAY BREINER, | § | |
| LINDA HICKOK, SHELLY | § | |
| FARROW, SHANNA BLALOCK, | § | |
| VANESSA GUZMAN, and VICTOR | § | |
| GOMEZ, | § | |
| | § | |
| Defendants. | § | |
| _____ | § | |

ORDER: (1) GRANTING DEFENDANTS' MOTION TO DISMISS;
(2) DENYING PLAINTIFF'S FIRST MOTION TO DISMISS; (3)
DENYING PLAINTIFF'S SECOND MOTION TO DISMISS

Before the Court are three motions to dismiss: the first was filed by

Jourdanton Hospital Corp. d/b/a South Texas Regional Medical Center ("South

Texas Regional Medical Center"), Kay Breiner, Linda Hickok, Shelly Farrow,

Shanna Blalock, Vanessa Guzman, and Victor Gomez (collectively, "Defendants")

(Dkt. # 4); the second and third were filed by Plaintiff Andrea Pruitt ("Plaintiff" or

"Pruitt") (Dkts. ## 7, 10).  Pursuant to Local Rule 7(h), the Court finds the matter

suitable for disposition without a hearing.  For the reasons that follow, the Court

**GRANTS** Defendants' Motion (Dkt. # 4), **DENIES** Pruitt's First Motion (Dkt. # 7), and **DENIES** Pruitt's Second Motion (Dkt. # 10).

<u>BACKGROUND</u>

The instant motions arise out of Pruitt's employment with South Texas Regional Medical Center, where Pruitt was employed as a Registered Nurse in the Cardiopulmonary Department in 2013.  (<u>See</u> "Pet.," Dkt. # 1, Ex. 1, Ex. A at 2; <u>id.</u>, Ex. E at 3; <u>id.</u>, Ex. I at 2.)

On October 3, 2013, Pruitt met with her supervisor, Kay Breiner ("Breiner"), for her 90-day evaluation.  (Pet., Ex. A at 2.)  During the meeting, Breiner counseled Pruitt on mixing up documentation on patient charts and checking in with her supervisors before leaving the unit for any length of time. (<u>Id.</u>)  Pruitt understood the action items to be "do-able" and "simple" to implement. (Pet., Ex. B at 2.)

On October 10, 2013, Pruitt received a written warning that documented the October 3 conversation and described two incidents that occurred on October 8, 2013, when Pruitt allegedly challenged a doctor in front of a patient and later mixed up the paperwork for two patients.  (Pet., Ex. A at 2.)  The warning recommended a thirty-day period for Pruitt to correct the behavior at issue, and noted that another incident within the thirty days would result in a second written warning.  (<u>Id.</u> at 3.)

2

The same day, Pruitt submitted a written response to the written warning, which clarified the issues discussed on October 3, 2013, as well as the incidents that occurred on October 8, 2013.  (Pet., Ex. B at 2.)  Accordingly, Pruitt refused to sign the written warning on October 11, 2013.  (Pet., Ex. C at 3.)  On November 8, 2013, she filed an employee grievance regarding the written warning, in which she challenged the factual allegations in the written warning and stated that the "harassment inflicted upon [her] is discriminatory due to my being the only African American female and being the only Registered Nurse in [the] department."  (Pet., Ex. E at 3.)

On November 25, 2013, Shanna Blalock ("Blalock") became Pruitt's supervisor, as decided at a meeting between Pruitt, Linda Hickok ("Hickok"), and Shelly Farrow ("Farrow").  (Pet., Ex. E at 7; id., Ex. G at 7.)  On December 17, 2013, Human Resources completed its investigation into Pruitt's grievance, noting that the October 10 written warning had been reissued with changes to some of the contested statements.  (Id.)  Pruitt again refused to sign the written warning.  (Pet., Ex. G at 2.)

Pruitt appealed the resolution of her grievance in February 2014, contending that the harassment that she encountered under Breiner had continued under the supervision of Blalock.  (Pet., Ex. I at 2–5.)  Her appeal cited three major incidents that Pruitt dubbed "harassment."  First, on December 4, Pruitt was

working with Vanessa Guzman ("Guzman"), who notified her that "the pulses were not marked" for a particular patient following a cardiac catherization procedure. (Id. at 4.) Pruitt acknowledged her oversight, but the next day, Guzman allegedly falsely stated and yelled to Blalock that Pruitt "did not check the pulses" of that patient while the three were tending to a different patient. (Id.) Second, on December 19, 2014, Pruitt alleges that she told Gomez and Blalock in the morning that she was leaving early at noon. (Id. at 3.) She alleges that she left at noon after verifying with other staff that there was nothing left on the schedule, but that at 1:40 p.m., she received a text message from Victor Gomez ("Gomez") asking, "Hey Andrea where r u?" (Id.) She also alleges that while she was responding, she received another message from Blalock. (Id.) Third, during a meeting on January 17, 2014, Blalock stated, "I don't know what [Pruitt] is doing after procedures, I have a hard time finding her" in a meeting with Hickok, Gomez, and Pruitt. (Id. at 2.) During the same meeting, Pruitt informed the three, orally and with a supporting physician letter, that her doctor told her she needed a temporarily reduced workload to address Pruitt's "Vertebral Subluxation." (Id.) Pruitt alleges that Blalock responded that Pruitt "was not able to fulfill her job responsibilities" several times and refused to grant her leave. (Id. at 2–3.)[1]

---

[1] The Court notes that, in her supplemental memorandum, Pruitt supplied additional information regarding a February 2014 written warning, her response,

On April 7, 2014, Pruitt filed a charge of discrimination with the EEOC, in which she alleged a hostile work environment and discrimination claim based on race and sex as a continuing action running from October 8, 2013 to the date of filing.  (Pet., Ex. N at 7–8.)  She received a dismissal and notice of right to sue on April 16, 2014.  (Id. at 3.)

On July 21, 2014, Pruitt filed suit in the Atascosa County District Court, 81st Judicial District, asserting claims of discrimination and harassment under Title VII of the Civil Rights Act of 1964 ("Title VII") against Breiner, Blalock, Gomez, Hickok, and Farrow; a disparate impact claim under the Civil Rights Act of 1991 against Breiner, Blalock, Gomez, Farrow, and Hickok; a claim of "coercive acts" against Breiner; claims of "breach of duty" against Breiner, Farrow, and Hickok; breach of contract claims against Hickok and Farrow; a "violation of equal rights" claim against Breiner; a "defamation of character–slander" claim against Guzman; and an equal protection claim against South Texas Regional Medical Center.  (Pet. at 3–7.)  Pruitt seeks the maximum amount of monetary damages allowable by law.  (Id. at 8.)

On September 12, 2014, Defendants removed the case to this Court,

and her subsequent March 2014 grievance, which arose out of the written warning. This information is not part of Pruitt's complaint, and therefore not part of the allegations of her case.  Nevertheless, the Court notes that there are no allegations in any of the supporting documentation that address Pruitt's race or gender.

invoking the Court's federal question jurisdiction.  (Dkt. # 1.)  On September 19, 2014, Defendants filed their Motion to Dismiss.  (Dkt. # 4.)  On October 10, 2014, Pruitt filed a "Pro-Se Motion to Dismiss Due to Improper Notice and Due Process" (Pruitt's "First Motion"), which the Court construes as her Response to Defendants' Motion to Dismiss, as well as a Motion to Remand.  (Dkt. # 7.)  On October 17, 2014, Defendants filed a Response to Pruitt's Motion (Dkt. # 8), as well as a Reply to the Response to the Motion to Dismiss.  (Dkt. # 9.)  On October 20, 2014, Pruitt filed a second "Pro-Se Motion to Dismiss due to Improper Notice and Due Process" (Pruitt's "Second Motion").  (Dkt. # 10.)  On January 20, 2015, the Court granted Pruitt leave to file a supplementary memorandum.  (Dkt. # 23.)  On January 23, 2015, Pruitt filed a supplemental memorandum (Dkt. # 24) and on January 27, 2015, Defendants filed a reply (Dkt. # 27).

<u>LEGAL STANDARD</u>

I.    <u>Motion to Remand</u>

"It is axiomatic that the federal courts have limited subject matter jurisdiction and cannot entertain cases unless authorized by the Constitution and legislation." <u>Coury v. Prot</u>, 85 F.3d 244, 248 (5th Cir. 1996).  Unless the Court has diversity jurisdiction, a defendant may remove a case from state to federal court only if the case could have originally been filed in federal court.  <u>Halmekangas v. State Farm Fire & Cas. Co.</u>, 603 F.3d 290, 295 n.19 (5th Cir. 2010)

(citing Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987)).  Accordingly, a federal court must remand a case back to state court (1) if there was a procedural defect rendering removal improper and the moving party raises the defect within thirty days of removal or (2) if the court lacks subject matter jurisdiction.  28 U.S.C. § 1447; see also BEPCO, L.P. v. Santa Fe Minerals, Inc., 675 F.3d 466, 470 (5th Cir. 2012).  Because removal jurisdiction implicates federalism concerns, "[a]ny doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction."  African Methodist Episcopal Church v. Lucien, 756 F.3d 788, 793 (5th Cir. 2014) (internal quotation marks omitted) (quoting Acuna, 200 F.3d at 339); Frank v. Bear Stearns & Co., 128 F.3d 919, 922 (5th Cir. 1997).

In the case of remand based on a procedural defect, the thirty-day period is strictly construed.  Schexnayder v. Entergy La., Inc., 394 F.3d 280, 284 (5th Cir. 2004).  "[A] motion for remand based on procedural defects that is brought more than 30 days after the removal of the action, is outside of the district court's power to grant."  Id.  Conversely, remand based on subject matter jurisdiction can occur at any time before final judgment.  African Methodist Episcopal Church, 756 F.3d at 793.  The party seeking removal bears the burden of demonstrating subject matter jurisdiction.  Shearer v. Sw. Serv. Life Ins. Co., 516 F.3d 276, 278 (5th Cir. 2008).  To determine whether jurisdiction is present for removal, the court considers the claims in the state court petition as they existed at

the time of removal.  <u>Louisana</u>, 746 F.3d at 636.

## II.     Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  In analyzing a motion to dismiss for failure to state a claim, the court "accept[s] 'all well pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  <u>United States ex rel. Vavra v. Kellogg Brown & Root, Inc.</u>, 727 F.3d 343, 346 (5th Cir. 2013) (quoting <u>In re Katrina Canal Breaches Litig.</u>, 495 F.3d 191, 205 (5th Cir. 2007)).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[2] <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).

## III.    Pro Se Pleadings

It is well-established that courts must liberally construe the filings of pro se litigants.  <u>Haines v. Kerner</u>, 404 U.S. 519, 520–21 (1972); <u>Windland v.</u>

---

[2] The Court notes that the standards set forth in <u>Twombly</u> and <u>Iqbal</u> have replaced the less stringent standard articulated by the Supreme Court in <u>Conley v. Gibson</u>, 355 U.S. 42, 45–46 (1957), which Pruitt cites in her Response.  (Dkt. # 7 at 3.)

<u>Quarterman</u>, 578 F.3d 314, 316 (5th Cir. 2009) (noting the "well-established precedent requiring that [the court] construe pro se briefs liberally").  Accordingly, during a sufficiency inquiry, courts hold pro se complaints to "less stringent standards than formal pleadings drafted by lawyers."  <u>Hale v. King</u>, 642 F.3d 492, 499 (5th Cir. 2011) (internal quotation marks omitted) (quoting <u>Calhoun v. Hargrove</u>, 312 F.3d 730, 733 (5th Cir. 2002)).  Nevertheless, pro se parties must still "abide by the rules that govern the federal courts" and must "properly plead sufficient facts that, when liberally construed, state a plausible claim to relief."  <u>E.E.O.C. v. Simbaki, Ltd.</u>, 767 F.3d 475, 484 (5th Cir. 2014) (internal quotation marks omitted).

<u>DISCUSSION</u>

I.    <u>Pruitt's Motion to Remand</u>

In her First Motion, Pruitt argues that the Defendants' Notice of Removal and Motion to Dismiss are "imperfect" because Gomez has not received proper notice of the suit.  (Dkt. # 7 at 2.)  Pruitt states that she has not received back the "Registered Mailing Summons" for Gomez.  (<u>Id.</u>)  Accordingly, she requests that "defendants [sic] motion for Notice of removal" be denied.  (<u>Id.</u> at 5.) To the extent that Pruitt argues that her case should be remanded to state court based on procedural defect, the Court denies the motion.

Under 28 U.S.C. § 1446(b)(2)(A), "all defendants who have been

9

properly joined and served must join in or consent to the removal of the action."
Here, it is undisputed that Defendants South Texas Regional Medical Center,
Breiner, Hickok, Farrow, Blalock, and Guzman were all properly served.  Each of
those defendants properly joined and consented to the removal.  (Dkt. # 1 at 3.)
According to § 1446(b)(2)(A), these are the only parties whose consent to removal
is required to render the removal procedurally effective.  See Jernigan v. Ashland
Oil Co. Inc., 989 F.2d 812, 815 (5th Cir. 1993).

   Although Pruitt contends that Gomez was not properly served,
ineffectiveness of service does not bar his appearance in the lawsuit.  "[R]egardless
of the power of the State to serve process, an individual may submit to the
jurisdiction of the court by appearance."  Ins. Corp. of Ir., Ltd. v. Compagnie des
Bauxites de Guinee, 456 U.S. 694, 703 (1982).  Although his joinder in the Notice
of Removal did not constitute a general appearance, Gomez has since made a
general appearance in the suit by filing the Motion to Dismiss (Dkt. # 4) and the
Answer (Dkt. # 5).  Emp'rs Reinsurance Corp. v. Bryant, 299 U.S. 374, 376 (1937)
("Obtaining the removal from the state court into the federal court d[oes] not
operate as a general appearance by the defendant."); accord Roumel v. Drill Well
Oil Co., 270 F.2d 550, 555 (5th Cir. 1959); see also City of Clarksdale v.
BellSouth Telecomm'ns, Inc., 428 F.3d 206, 214 (5th Cir. 2005) ("The filing of the
answer constitutes a voluntary appearance in the federal district court.").

Pruitt appears to argue that, because Gomez has joined the Notice of Removal and because Gomez was improperly served, the removal was defective. However, the Court can find no authority suggesting that the joinder and consent of a party who voluntarily submits himself to the jurisdiction of the court would render the removal defective.  Indeed, such a holding would be at odds with the rationale requiring all proper defendants to consent to removal.  See Getty Oil Corp. v. Ins. Co. of N. Am., 841 F.2d 1254, 1262 n.11 (5th Cir. 1988) (noting that the purpose of the consent requirement is to avoid binding a defendant to federal jurisdiction without his consent).

Accordingly, there is no procedural defect that requires remand in this case.[3]  Therefore, to the extent that Pruitt's First Motion argues for remand, the Court **DENIES** the Motion.

II.    Pruitt's Motion to Dismiss

Pruitt's Second Motion asks "that a sworn affidavit be submitted to the court by Mr. Victor Gomez, to acknowledge his placement in this lawsuit and

---

[3] The Court notes that Defendants have complied with all of the other procedural requirements under 28 U.S.C. § 1446: Defendants filed the Notice of Removal on September 12, 2014, which was within 30 days of the earliest service of process on August 20, 2014; they promptly notified Pruitt and the state court of removal; and they attached a copy of all process, pleadings, and orders served on Defendants to their Notice of Removal.  See 28 U.S.C. § 1446(a), (b), & (d).  Additionally, because Pruitt alleges claims under Title VII and the United States Constitution, the Court has subject matter jurisdiction over the case.  See 28 U.S.C. §§ 1331, 1367(a).

that he is aware that the sworn affidavit will serve as his proper notification and due diligence under Civil Procedure in this matter, so you can adjudicate in honor." (Dkt. # 10 at 2.)  Additionally, Pruitt cites "Federal Rule of Civil Procedure 3.19." (Id. at 1.)

As the Court has discussed above, Gomez has made a voluntary appearance in the lawsuit by filing an answer and motion to dismiss in the case. Accordingly, he has made a general appearance and no further action by Gomez is required.  There being no Federal Rule of Civil Procedure 3.19, nor any provision in Federal Rule of Civil Procedure 3 applicable to the current stage of proceedings, the Court **DENIES** Pruitt's Second Motion.

III.   Defendants' Motion to Dismiss

In their Motion, Defendants first argue for dismissal of the claims brought under Title VII and the Civil Rights Act of 1991 because (1) the claims are time-barred; (2) Title VII does not impose individual liability; and (3) Pruitt has failed to state any facts supporting a prima facie case of discrimination.  (Def. Mot. at 5–11.)  Second, Defendants argue for dismissal of the coercive acts and breach of duty claims because the claims are not cognizable causes of action under federal or state law.  (Id. at 11–12.)  Third, Defendants argue for dismissal of the breach of contract, equal rights, and defamation claims because Pruitt has not alleged facts to support the necessary elements of each claim.  (Id. at 12–17.)  Fourth, Defendants

argue for dismissal of the equal protection claim because the Fourteenth Amendment does not protect private actions by private actors.  (Id. at 17–18.) Finally, Defendants argue that the damages claim fails to identify the particular damages sought and the whether they are recoverable under the causes of action alleged.  (Id. at 18.)  The Court addresses each argument in turn.

    A.    <u>Title VII and Civil Rights Act of 1991 Claims</u>

Defendants first argue for dismissal of Pruitt's Title VII and Civil Rights Act of 1991 claims because (1) the claims are time-barred; (2) Title VII does not impose individual liability; and (3) Pruitt has failed to state any facts supporting a prima facie case of discrimination, and particularly fails in alleging any facts showing an adverse employment action.  (Def. Mot. at 5–11.)

At the outset, the Court notes that the Civil Rights Act of 1991 amended the Civil Rights Act of 1964 to provide additional sources of remedy in employment discrimination cases and to clarify disparate impact actions.  <u>See</u> Civil Rights Act of 1991, Pub. L. No. 102–166, § 2, 105 Stat. 1071, 1071 (1991).  Based on the allegations in the Petition, the Court construes Pruitt's claims under the Civil Rights Act of 1991 as disparate impact claims brought under Title VII. Accordingly, the Court addresses Pruitt's claims collectively as "Title VII claims."

    1.    <u>Whether Pruitt's Claims Are Time-Barred</u>

Defendants first argue that Pruitt's Title VII claims are time-barred

because she filed suit on July 21, 2014—six days outside the requisite ninety-day window.  (Def. Mot. at 6.)  Pruitt contends that her petition was timely.  (Dkt. # 7 at 4.)

Title VII's statutory text requires any civil action to be brought within ninety days of receipt of an EEOC notice of right to sue.  42 U.S.C. § 2000e–5(f)(1); see also Harris v. Boyd Tunica, Inc., 628 F.3d 237, 239 (5th Cir. 2010) ("Section 2000e–5(f)(1) requires a civil action be commenced within ninety days after the plaintiff has received a right-to-sue notice from the EEOC.").  The ninety-day period is strictly construed from the date of receipt.  Taylor v. Books A Million, Inc., 296 F.3d 376, 379 (5th Cir. 2002).  As a general rule, "the giving of notice to the claimant at the address designated by him suffices to start the ninety-day period."  Espinoza v. Mo. Pac. R. Co., 754 F.2d 1247, 1250 (5th Cir. 1985).

"When the date on which a right-to-sue letter was actually received is either unknown or disputed, courts have presumed various receipt dates ranging from three to seven days after the letter was mailed."  Taylor, 296 F.3d at 379.  However, the Fifth Circuit has never firmly decided the exact number of days for the presumption of receipt of a right to sue letter.  See Morgan v. Potter, 489 F.3d 195, 196 (5th Cir. 2007) ("The exact number of days is thus an open question in this Circuit, but we have expressed satisfaction with a range between three and

14

seven days.").

This Court has exhaustively addressed the appropriate number of days for presumption of receipt of a right-to-sue letter in Jenkins v. City of San Antonio Fire Dep't, 12 F. Supp. 3d 925, 934–939 (2014).  In Jenkins, the plaintiff filed suit ninety-six days after receiving the right-to-sue letter from the EEOC.  Id. at 934. After surveying case law from the Fifth Circuit and across the country, this Court concluded that the appropriate presumption of receipt for a right-to-sue letter is three days.  Id. at 936.

Although the presumptive period is three days, the plaintiff can rebut that presumption by providing "sworn testimony or other admissible evidence from which it could reasonably be inferred either that the notice was mailed later than its typewritten date or that it took longer than three days to reach her by mail."  Sherlock v. Montefiore Med. Ctr., 84 F.3d 522, 526 (5th Cir. 1996).

Moreover, because the Fifth Circuit treats the ninety-day period akin to a statute of limitations, "the ninety-day filing requirement is [also] subject to equitable tolling." Harris, 628 F.3d at 239 (internal quotation marks omitted). Equitable tolling is general available only in "rare and exceptional circumstances," typically where "the claimant has actively pursued [her] judicial remedies by filing a defective pleading during the statutory period, or where [she] has been induced or tricked by [her] adversary's misconduct in allowing the filing deadline to

15

pass." Id.

The record establishes that the EEOC issued its right-to-sue letter on April 16, 2014. (Pet., Ex. N.)  Because the record does not establish the date that Pruitt received the letter, and because Pruitt has not offered any evidence to rebut the three-day presumptive period,[4] the Court presumes a three-day presumption of receipt.  Accordingly, when Pruitt filed her petition on July 21, 2014, the ninety-day limitations period had already run. Since Pruitt has not presented any facts to suggest that equitable tolling would be appropriate in this case, the Court finds that her Title VII claims are untimely.  Accordingly, the Court **GRANTS** Defendants' Motion as to the Title VII claims.

> 2.    Whether Individual Defendants Are Liable

Even if Pruitt's claims had not been time-barred, dismissal of Pruitt's Title VII claims is nevertheless warranted because they are improperly brought against defendants in their individual capacities.  (See Def. Mot. at 6–7.)

---

[4] Pruitt supplies a calendar for April 2014, noting that the week of April 14 was a "holiday week."  (Dkt. # 24 at 5.)  As Defendants rightly note, there was no United States Postal Service Holiday that week.  (Dkt. # 27, Ex. 1.)

The only reference that Pruitt makes to address the presumption of receipt is a note in her supplemental memorandum, which states "Notice of Suit Rights- Mailed April 16, 2014, Received April 21 or 22."  (Dkt. # 24 at 2.)  This is insufficient to meet her burden.  See Sherlock, 84 F.3d at 526 (requiring "sworn testimony or other admissible evidence from which it could reasonably be inferred either that the notice was mailed later than its typewritten date or that it took longer than three days to reach her by mail").

It is well-established that Title VII does not permit plaintiffs to recover against individual employees; instead, Title VII only creates liability for employers. 42 U.S.C. § 2000e–2(a)(1) ("It shall be an unlawful employment practice for an employer . . . ."). Title VII defines the term employer to include "any agent" of the employer, which the Fifth Circuit has interpreted to mean any immediate supervisor delegated an employer's traditional rights, such as hiring and firing. 42 U.S.C. § 2000e(b); Harvey v. Blake, 913 F.2d 226, 227 (5th Cir. 1990).

It is also well-established in the Fifth Circuit that, despite this definition, Title VII does not impose individual liability on employees. Indest v. Freeman Decorating, Inc., 164 F.3d 258, 262 (5th Cir. 1999) (citations omitted) (noting that the purpose of the language is to incorporate respondeat superior liability into Title VII). Rather, Title VII liability is only available against employers and employees in their official capacities, as a suit against an employee in his official capacity is effectively a suit against the employer. Harvey, 913 F.2d at 227–28 ("Because [defendant's] liability under Title VII is premised upon her role as agent of the city, any recovery to be had must be against her in her official, not her individual capacity"); see also Indest, 164 F.3d at 262 ("a Title VII suit against an employee is actually a suit against the corporation."). However, a plaintiff cannot sue both an employer and an employee in his official capacity,

since such a posture would subject the company to double liability.[5]  Indest, 164 F.3d at 262.

      Here, Pruitt has not specified whether she filed suit against the named employees in their individual or official capacities.  Accordingly, the Court must look to the "course of proceedings" to determine the type of liability that she seeks.  See Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985) ("In many cases, the complaint will not clearly specify whether officials are sued personally, in their official capacity, or both.  'The course of proceedings' in such cases typically will indicate the nature of the liability sought to be imposed."); accord United States ex rel. Adrian v. Regents of Univ. of Cal., 363 F.3d 398, 402–03 (5th Cir. 2004). Courts consider various factors in this inquiry, including the substance of the complaint, the nature of relief sought, and statements in dispositive motions and

---

[5] In support of their argument, Defendants cite to Ackel v. Nat'l Commc'ns, Inc., 339 F.3d 376 (5th Cir. 2003).  In Ackel, the Fifth Circuit commented in a footnote, "Individuals are not liable under Title VII in either their individual or official capacities."  Id. at 382 n.1.  In support, the court cited to a case merely restating the general rule that Title VII imposes no individual liability and that plaintiffs cannot sue both an employer and its agent in an official capacity.  Smith v. Amedisys Inc., 298 F.3d 434, 448–49 (5th Cir. 2002).

     The footnote at issue merely comments that the district court properly dismissed the claims against the individuals originally named as defendants, presumably because the plaintiff also sued the company under Title VII.  See Ackel, 339 F.3d at 382.  Because Ackel does not indicate that it is overturning existing precedent, and because dismissal of the individual defendants was proper because the plaintiff had sued both the company and individual employees, this Court interprets the footnote in Ackel to be dicta that does not change the rules set out in Harvey.

responses.  <u>See, e.g.</u>, <u>Spease v. Cooper</u>, No. 1:12-CV-371, 2014 WL 526142, at *5 (E.D. Tex. Feb. 4, 2014) (concluding that plaintiff brought claim against defendants in their official capacities, where plaintiffs did not challenge that characterization of their claims in the defendants' motion to dismiss, where the complaint only named individual employees in the section listing the defendants, and where plaintiffs asserted the same claims against each of the defendants); <u>McPhail v. City of Jackson</u>, No. 3:13-CV-146-HSO-RHW, 2014 WL 2819026, at *5 (S.D. Miss. June 23, 2014) (finding that plaintiff brought claims against defendant in his individual capacity because the requested damages were only available against officers in their individual capacities and because the briefs were "replete with argument regarding qualified immunity," which only applies to individual capacity claims).

With regard to the present case, Pruitt has made no allegations in her petition or in the referenced exhibits that any of the defendants she has named have the authority to hire or fire her.  Accordingly, there are no facts to show that the defendants are the types of employees that Pruitt can hold liable in their official capacity.  Moreover, the course of proceedings more broadly suggests that Pruitt has brought suit against the defendants individually.  She individually lists each defendant's name in the Title VII and Civil Rights Act of 1991 sections of her petition, and supports the claims against each defendant with particularized

allegations pertaining to their specific behavior.

Because Pruitt cannot bring a Title VII claim against defendants in

their individual capacities, the claims warrant dismissal.[6]

---

[6] The Court notes that, even if the Court construed Pruitt's claims as official capacity claims, effectively bringing suit against South Texas Regional Medical Center, Pruitt's Title VII claims would nevertheless fail because she fails to allege facts supportive of a prima facie case of disparate treatment, disparate impact, or harassment.

"To succeed on a claim of intentional discrimination under Title VII . . . or Section 1981, a plaintiff must first prove a prima facie case of discrimination. Generally, a plaintiff proves a prima facie case through a four-element test that allows an inference of discrimination[,] [b]ut a prima facie case can also be proven by direct evidence of discriminatory motive." Wallace v. Tex. Tech Univ., 80 F.3d 1042, 1047–48 (5th Cir. 1996) (internal citations omitted); see also Wesley v. Gen. Drivers, Warehousemen and Helpers Local 745, 660 F.3d 211, 213 (5th Cir. 2011) (quoting Lee v. Kan. City S. Ry. Co., 574 F.3d 253, 259 (5th Cir. 2009)) (requiring a showing that (1) [plaintiff] is a member of a protected class, (2) [s]he was qualified for the position at issue, (3) [s]he was the subject of an adverse employment action, and (4) [s]he was treated less favorably because of [her] membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances."). Pruitt has presented no allegations that would show direct evidence of discriminatory motive, nor has she made out her prima facie case under the circumstantial evidence test. Most critically, she fails to identify an adverse employment action: there are no allegations that she has experienced an employment action that affected her job duties, compensation or benefits. See Thompson v. City of Waco, 764 F.3d 500, 503 (5th Cir. 2014).

A harassment claim under Title VII is more commonly known as a hostile work environment claim, which requires a showing that the plaintiff "(1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on [the protected characteristic]; (4) the harassment complained of affected a term condition, or privilege of employment; [and] (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action." Royal v. CCC & R Tres Arboles, L.L.C., 736 F.3d 396, 401 (5th Cir. 2013) (citing Hernandez v. Yellow

B.      Equal Rights and Equal Protection Claims

Next, Defendants contend that Pruitt's equal rights claim against

Breiner should be dismissed because she fails to state a claim under 42 U.S.C.

§ 1981.  (Def. Mot. at 13–14.)  In her petition, Pruitt alleges that Breiner

"demonstrated a violation of equal rights by . . . placing a less qualified male in a

position [Pruitt] signed a contract for."  (Pet. at 6.)

Defendants also contend that Pruitt's equal protection claim against

South Texas Regional Medical Center should be dismissed because the Fourteenth

Amendment only protects against state action and the hospital is a private

corporation.  (Def. Mot. at 17.)  In her petition, Pruitt alleges that South Texas

---

Transp., Inc., 670 F.3d 644, 651 (5th Cir. 2012)).  Pruitt has presented no facts
alleging that the harassment was based on her race or gender; her broad allegation
that the harassment is due to her "being the only African American female and
being the only Registered Nurse" is insufficient to meet her burden.  See Iqbal, 556
U.S. at 678 ("Threadbare recitals of a cause of action, supported by mere
conclusory statements, do not suffice.").

Finally, "[t]o establish a prima facie case of discrimination under a
disparate-impact theory, a plaintiff must show: (1) an identifiable, facially neutral
personnel policy or practice; (2) a disparate effect on members of a protected class;
and (3) a causal connection between the two."  McClain v. Lufkin Indus., Inc., 519
F.3d 264, 275 (5th Cir. 2008).  In general, a prima facie case of disparate-impact
liability requires "a threshold showing of a significant statistical disparity, and
nothing more."  Ricci v. DeStefano, 557 U.S. 557, 587 (2009).  The facts alleged
in Pruitt's petition and incorporated exhibits do not identify any facially neutral
employment practice that disparately impacts females or African-Americans, nor
do they show any significant statistical disparity between disciplinary policies as
applied to members of either protected class.  Accordingly, Pruitt does not allege
sufficient facts to support a disparate-impact claim under Title VII.

Regional Medical Center failed to provide her equal protection by "employing managers, directors and chief nursing officers who have been shown to consistently violate this Amendment."   (Pet. at 7.)

Generally, violations of "equal rights" find legal remedy in 42 U.S.C. § 1981, which provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory . . . as is enjoyed by white citizens."  However, since Pruitt's allegations supporting this claim arise from her gender, her claims are not cognizable under § 1981.  Bobo v. ITT, Cont'l Baking Co., 662 F.2d 340, 344–45 (5th Cir. 1981).  Nor can Pruitt's claims succeed under the Equal Protection Clause of the Fourteenth Amendment.  The Equal Protection Clause only protects against state action, e.g., Burton v. Wilmington Parking Auth., 365 U.S. 715, 721–22 (1961), and South Texas Regional Medical Center is a privately held corporation (Dkt. # 2 at 1).

Instead, the appropriate remedy for discrimination in the employment context is Title VII.  However, for the reasons discussed in footnote 6, Pruitt has failed to allege sufficient facts in her petition and supporting documents to support the prima facie elements of a Title VII claim.  Accordingly, the Court **GRANTS** Defendants' Motion as it pertains to Pruitt's equal rights and equal protection claims.

C.     <u>Coercive Acts Claim</u>

Next, Defendants contend that dismissal of Pruitt's "coercive acts" claim is warranted because there is no such cause of action under federal or state law.  In her petition, Pruitt alleges that Breiner "demonstrated coercive acts by" asking her "to sign a disciplinary action notice that was a false statement."  (Pet. at 5.)

The Court is unable to locate any source in federal or state law for a claim based on "coercive acts," nor does Pruitt identify one.  Accordingly, the Court **GRANTS** Defendants' Motion as to the coercive acts claim.

D.     <u>Breach of Duty Claims</u>

Defendants next argue that Pruitt's breach of duty claim warrants dismissal because there is no such cause of action under federal or state law.  (Def. Mot. at 12.)  Pruitt's petition alleges that Breiner breached her duty by asking Pruitt to sign a disciplinary notice that was a false statement and by skipping steps in the disciplinary process.  (Pet. at 5.)  She also alleges that Farrow and Hickok breached their duties by not honoring Pruitt's request for a new director until weeks after Pruitt made the request.  (<u>Id.</u>)

To the extent that Pruitt alleges a claim of breach of fiduciary duty, her claim cannot succeed.  To make out a breach of fiduciary duty claim under Texas law, a plaintiff must show that "(1) a fiduciary relationship existed between

the plaintiff and defendant; (2) the defendant breached its fiduciary duty to the

plaintiff; and (3) the defendant's breach resulted in injury to the plaintiff or benefit

to the defendant." Homoki v. Conversion Servs., Inc., 717 F.3d 388, 402–03 (5th

Cir. 2013).  Although employees may have a fiduciary duty to their employers in

limited circumstances, "employers generally do not owe fiduciary duties to their

employees." Navigant Consulting, Inc. v. Wilkinson, 508 F.3d 277, 283 (5th Cir.

2007); Meadows v. Hartford Life Ins. Co., 492 F.3d 634, 640 (5th Cir. 2007).  The

Court can find no authority suggesting that the duties that Pruitt identifies are

cognizable under Texas law as fiduciary duties.

   Similarly, to the extent that Pruitt's breach of duty claims are general

claims of negligence, her allegations are insufficient.  To bring a negligence claim

under Texas law, a plaintiff must show (1) a legal duty, (2) a breach of that duty,

and (3) damages proximately resulting from the breach. Ramirez v. Colonia

Freight Warehouse Co., Inc., 434 S.W.3d 244, 249 (Tex. App.—Hous. [1st ]

2014).  "Whether a legal duty exists under a set of facts is a question of law.  In

determining whether to impose a duty, th[e] Court must consider the risk,

foreseeability, and likelihood of injury weighed against the social utility of the

actor's conduct, the magnitude of the burden of guarding against the injury and the

consequences of placing that burden on the actor." Bird v. W.C.W., 868 S.W.2d

767, 769 (Tex. 1994).

The Court is unaware of and has been unable to locate any legal support for the duties that Pruitt identifies.  Nor is the Court willing to consider whether such duties exist independently in the absence of any clear injury identified by Pruitt.  Accordingly, the Court **GRANTS** Defendants' Motion as pertaining to her breach of duty claims.

E.      Breach of Contract Claims

Defendants next contend that Pruitt's breach of contract claims are insufficient, as she fails to demonstrate her prima facie case.  (Def. Mot. at 12–13.) To establish breach of contract under Texas law, a plaintiff must show: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach."  Smith Int'l, Inc. v. Egle Grp., LLC, 490 F.3d 380, 387 (5th Cir. 2007).

The Court agrees with Defendants that Pruitt has failed to allege any facts that identify a valid contract between herself, Breiner, Hickok, and Farrow. Accordingly, the Court cannot determine what facts, if any, show a breach of terms of the contract.  The Court therefore **GRANTS** Defendants' motion as pertaining to the breach of contract claims.

F.      Defamation of Character–Slander Claim

Finally, Defendants contend that dismissal of Pruitt's "defamation of

character–slander" claim is warranted because she failed to allege facts supporting a prima facie case of defamation and, regardless, a qualified privilege protects Guzman from liability.  (Def. Mot. at 14–17.)

"To prevail on a defamation claim, the plaintiff must prove that the defendant (1) published a statement, (2) that was defamatory concerning the plaintiff, (3) while acting with . . . negligence, if the plaintiff is a private individual, regarding the truth of the statement."  In re Lipsky, 411 S.W.3d 530, 543 (Tex. App.—Ft. Worth 2013).  In her petition, Pruitt alleges that Guzman committed slander by making a false statement damaging to Pruitt's reputation.  (Pet. at 6.)  Pruitt alleges that, on December 4, 2014, Guzman noticed that "the pulses were not marked" for a particular patient following a cardiac catherization procedure, at which point Pruitt apologized to Guzman and stated that, because of the difficult morning, "marking the pulses had gotten past" her.  (Id., Ex. I at 4.)  The next day, Pruitt alleges that Guzman falsely stated and yelled to Blalock that Pruitt "did not check the pulses" of a patient on the day before.  (Id.)

     1.   Publication

Publication occurs when the maker of the statement discloses the statement to a third party.  Doe v. SmithKline Beecham Corp., 855 S.W.2d 248, 259 (Tex. App.—Austin 1993).  Here, Pruitt alleges that Guzman disclosed the defamatory statement about Pruitt to Blalock in front of another patient.  Because

Blalock and the patient were third parties, Pruitt has alleged facts sufficient to support the publication element of the defamation claim.

        2.      <u>Whether Statement Was Defamatory</u>

"A statement is defamatory 'if it tends to injure a person's reputation and thereby expose the person to public hatred, contempt, ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation.'" <u>In re Lipsky</u>, 411 S.W.3d at 543. "As statement may be defamatory, although literally true, if the omission of material facts allows a reasonable person to perceive a false impression." <u>Id.</u> at 544.

Pruitt states that the allegedly false statements made her feel "ineffective and incompetent in front of the patient and in front of [her] new director Shanna Blalock." (Pet., Ex. I at 4.) These facts are sufficient to allege that the statement tended to injure Pruitt's reputation and to impeach her reputation as a health care provider. Accordingly, Pruitt has alleged sufficient facts to support the defamatory element of the defamation claim.

        3.      <u>Whether Statement Was Negligent</u>

To show that the statement was negligent, the plaintiff must show that "the defendant should have known that the published statement was false." <u>In re Lipsky</u>, 411 S.W.3d at 543. It is here that Pruitt's allegations fall short. Her factual allegations are unclear as to whether she checked the pulse and failed to

27

mark it, or whether she failed to check and mark the pulse.  For that reason, Pruitt

fails to allege how Guzman would have known that her statement was false.

Because Pruitt fails to allege facts to support the third element of the defamation

claim, the Court **GRANTS** Defendants' Motion with respect to the defamation

claim.[7]

<u>CONCLUSION</u>

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to

Dismiss (Dkt. # 4).  Additionally, the Court **DENIES** Pruitt's First Motion, which

it construes as a Motion to Remand (Dkt. # 7).  Finally, the Court **DENIES** Pruitt's

Second Motion (Dkt. # 10.)  Accordingly, Pruitt's claims are **DISMISSED**

**WITHOUT PREJUDICE.**

**IT IS SO ORDERED.**

**DATED**: San Antonio, Texas, January 29, 2015.

_____

David Alan Ezra
Senior United States Distict Judge

---

[7] Because there are no outstanding claims, the Court does not address Defendants' argument that Pruitt fails to state a claim for damages because she fails to identify the damages sought and whether they are recoverable under the causes of action alleged.  (Def. Mot. at 18.)  However, the Court notes that if Pruitt chooses to refile her case in federal or state court, Pruitt should provide a more definite statement about the damages so that the Court can determine the type of damages that she seeks.